UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ARANTZA ESPINOZA,   CASE NO.

    Plaintiff,

vs.

INGLOT USA LLC.,
a Foreign limited liability company,

    Defendant.
_____/

**COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND**

Plaintiff, ARANTZA ESPINOZA, through undersigned counsel, sues Defendant, Inglot USA LLC, a Foreign limited liability company (hereinafter referred to as "Inglot"), for declaratory and injunctive relief, and damages, and alleges as follows:

1) This action is brought under Title III of the Americans With Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

2) This action is also brought pursuant to 28 C.F.R. Part 36.

3) This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

4) Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

5) Plaintiff is sui juris, and she is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

6) Defendant, Inglot is a foreign limited liability company authorized to do business and doing business in the State of Florida.

7) Defendant, Inglot is company that sells makeup, skincare products, nail products, fragrances, beauty accessories, and makeup cases. There is a retail location in Miami-Dade County.

8) Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9) Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase lipstick and mascara.

10) Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer. The computer is Plaintiff's personal property, and a claim for trespass attached to same.

11) The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

12) The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

13) Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

14) Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

15) At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision.

16) Plaintiff's visual impairment interferes with her day-to-day activities and causes limitations in visualizing their environment. As such, Plaintiff is a member of a protected class under the

ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

17)   Plaintiff regularly uses the computer, but she needs the assistance of special software for visually impaired persons.  The software that she uses is screen reader software that is readily available commercially.

18)   Defendant is a private entity which owns and operates retail locations.  The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

19)   Defendant's website is a place of public accommodation per 42 U.S.C. Section 12181(7)(E) because it's an extension of Defendant's brick and mortar stores.  The public is able to, among other things, locate Defendant's retail stores, view the products available at defendant's locations, purchase products through defendant's website, view current promotions, create custom eyeshadow palettes, subscribe to Defendant's newsletter, create an account and register to track orders, and learn the story behind Defendant's brand and advertising campaigns.  20)   Since the Defendant's website is a public accommodation, it must comply with the requirements of the ADA.  The website cannot discriminate against individuals with disabilities.

20)   Plaintiff is a customer of Defendant who is and was interested in purchasing lipstick and mascara through Defendant's website and at Defendant's stores and visiting Defendant's brick and mortar locations.

21) Plaintiff is not able to visit the physical locations without the assistance of a family member or caretaker, so the ability to purchase merchandise on Defendant's website for delivery to her home is important to her as an alternative when she is not able to visit the Defendant's stores.

22) The website also services Defendant's physical stores by providing information on its brand, sales campaigns, and other information that Defendant is interested in communicating to its customers about its physical locations.

23) Since the website allows the public the ability to locate Defendant's retail stores, view the products available at defendant's locations, purchase products through defendant's website, view current promotions, create custom eyeshadow palettes, subscribe to Defendant's newsletter, create an account and register to track orders, and learn the story behind Defendant's brand and advertising campaigns, the website is an extension of, and gateway to, Defendant's physical stores. By this nexus, the website is characterized as an intangible service, privilege and advantage provided by a place of public accommodation as defined under the ADA, and thus an extension of the services, privileges and advantages made available to the general public by Defendant through its retail brick and mortar stores.

24) Because the public can locate Defendant's retail stores, view and purchase Defendant's products that are also offered for sale by Defendant at its physical stores, view current promotions, create custom eyeshadow palettes, subscribe to Defendant's newsletter, create an account and register to track orders, and learn the story behind Defendant's brand and advertising campaign, the website is an extension of and gateway to the physical stores, which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). As such, the website, as an intangible service, privilege and advantage of Defendant's brick and mortar locations, must be fully accessible and in compliance with the ADA, must not discriminate against individuals with

disabilities, and must not deny full and equal enjoyment of the same services, privileges and advantages afforded to the general public both online and at the physical locations.

25) At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://inglotusa.com. Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, and Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA.

26) Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize, Defendant's physical stores, and purchase Defendant's products, sign up for Defendant's email list and account through the website and at Defendant's physical stores.

27) The opportunity to shop Defendant's merchandise from her home is an important accommodation for Plaintiff because traveling outside of the home as a visually disabled individual is often a difficult, hazardous, frustrating, confusing, and frightening experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

28) Like most consumers, Plaintiff accesses numerous websites at a time to compare merchandise and prices. Plaintiff may look at several dozens of sites to compare features and prices.

29) During the months of October and November 2019, Plaintiff attempted on several occasions to utilize the website to browse through the products to educate herself as to the products and with the intent to make a purchase through the website or at one of Defendant's physical stores.

30) Places of public accommodation are not just brick-and-mortar structures. The United States Department of Justice and the binding case law increasingly recognize that private entities are

providing goods and services to the public through websites that operate as places of public accommodation under Title III.

31) Defendant is required to make reasonable accommodations to its websites for individuals with disabilities to allow them to participate in web-based promotions and obtain goods or services via the Internet just as sighted persons are able to do.

32) Plaintiff utilized Chrome Vox ("Screen Reader Software") to attempt to purchase clothing on Defendant's website. However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

33) A person who can see can enjoy the benefits and privileges provided by Defendant's website that include, but are not limited to locating Defendant's retail stores, viewing the products available at defendant's locations, purchasing products through defendant's website, viewing current promotions, creating custom eyeshadow palettes, subscribing to Defendant's newsletter, creating an account and registering to track orders, and learning the story behind Defendant's brand and advertising campaigns.

34) A person who cannot see, like the Plaintiff in this case, cannot go to Defendant's website and avail themselves of the same privileges. Thus, the Plaintiff has suffered discrimination due to Defendant's failure to provide a reasonable accommodation for Plaintiff's disability.

35) The Department of Justice has provided useful guidance regarding website accessibility under the ADA, and the binding and persuasive case law in this district has applied the Web Content Accessibility Guidelines ("WCAG") 2.0 or 2.1 to determine accessibility.

36) Defendant's website does in fact fail the following WCAG 2.0-AA Compliance standards and it does not provide sufficient alternatives to serve the equivalent purpose:

Violation: Focusable components do not receive focus in an order that preserves meaning and operability.

> *Don't Miss Out On Our Special Offers* pop up modal does not receive focus and is not easily accessible when navigating with the keyboard sequentially Cart pop up modal when adding product to cart does not receive focus and is not easily accessible when navigating with the keyboard sequentially.

Applicable WCAG 2.0 Standard at Issue: *Standard 2.4.3 Focus Order (Level A)*.

Nature of the Violation: required by WCAG 2.0's *Standard 2.4.3 Focus Order.*

Violation: Labels or instructions are not provided when content requires user input.

> When item is added to cart it indicates the Add to Cart button is disabled but does not indicate in an audible format possible next steps – Continue Shopping or Proceed to Check Out. This is a result of the Cart pop up modal not receiving focus after item is added to cart (see *2.4.3 Focus Order* above*)*

Applicable WCAG 2.0 Standard at Issue: *Standard 3.3.2 Labels or Instructions (Level A).*

Nature of the Violation: required by WCAG 2.0's *Standard 3.3.2 Labels or Instructions.*

37) Furthermore, Defendant's website does not contain accessibility assistance that would direct a visually impaired person like the Plaintiff to someone who she can contact for assistance, questions, or concerns.

38) Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the website, in contravention of the ADA.

39) On information and belief, Defendant is, and at all times has been, aware of the barriers to its website which prevent individuals with disabilities who are visually impaired from comprehending the information within same, and is also aware of the need to provide access to all persons who visit its site.

40) Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this Complaint, such that this suit for declaratory judgment and injunctive relief is her only means to secure adequate and complete redress from Defendant's discriminatory practices in connection with use of its website.

41) Notice to Defendant is not required because of Defendant's failure to cure the violations.

42) Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

43) Plaintiff has retained the undersigned attorneys to represent her in this case, and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

44) Plaintiff realleges paragraphs 1 through 44 as if set forth fully herein.

45) Defendant owns and operates the https://www.inglotusa.com website, and is a public accommodation subject to the ADA pursuant to 42 U.S.C. §12181(7)(E).

46) Defendant's website is inaccessible to persons with disabilities like the Plaintiff, who is visually impaired. Plaintiff was not able to enjoy full and equal access to the information and services that Defendant has made available to the public on its website, in violation of 42 U.S.C. §12101. *et seq*, and as prohibited by 42 U.S.C. §12182 *et seq*.

47) Defendant's website is not in compliance with the ADA.

48) Defendant has made no reasonable accommodation for Plaintiff's disability.

49) A cursory review of a portion of the Defendant's website revealed that the website is not accessible to persons like the Plaintiff that are visually impaired as required by law and for which there is no sufficient alternative on Defendant's website, including:

Violation: A mechanism is not available to bypass blocks of content that are repeated on multiple Web pages.

No option is provided to skip navigation and access the page's content.

Applicable WCAG 2.0 Standard at Issue: *Standard 2.4.1 Bypass Blocks (Level A).*

Nature of the Violation: required by WCAG 2.0's *Standard 2.4.1 Bypass Blocks.*

50) Due to Defendant's failure to provide an ADA compliant website, the Plaintiff has been injured since she has been denied full access to Defendant's website.

51) As a result, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to correct the inaccessibility that leads to discrimination against visually impaired persons.

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendant for the following relief:

A.        A declaration that Defendant's website is in violation of the ADA;

B.        An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

C.        An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

D.        An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

E.        An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

F.        An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

G.        An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

H.        An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.        An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

J.        An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the

public policy statement with an accessible means of submitting accessibility questions and problems.

K.    An award to Plaintiff of her reasonable attorney's fees, costs and expenses; and

Such other and further relief as the Court deems just and equitable.

[1] 

## COUNT II – TRESPASS

52) Plaintiff realleges paragraphs 1 through 44 as if set forth herein.

53) Defendant's website contains software analytics. Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

54) Plaintiff never consented to and was unaware that Defendant's website was placing software on her computer.

55) Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on her personal computer, which was done without her knowledge and consent.

56) Defendant's trespass has damaged Plaintiff by affecting the condition and value of her computer.

57) On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom left of the page called "Privacy Policy", providing

that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

*PRIVACY POLICY*

*This Privacy Policy describes the types of personal information INGLOT USA LLC (14563 226th Street, Springfield Gardens, NY 11413) (hereinafter referred to as: INGLOT, we, us, our) collects about our customers (hereinafter referred to as: Customer, You, he/she), how we use such information, with whom we share it, and the choices available to our customers regarding our use of the information. INGLOT may use unaffiliated companies to help us maintain and operate our website or for other reasons relating to the operation of our business, and those companies may receive your personally identifiable information for that purpose. We suggest that you acquaint yourself with the Privacy Policy of the mentioned parties.*

*Our website may also contain links to or from other websites. Be aware that we are not responsible for the Privacy Practices of other websites. We encourage you to read the Privacy Policies of other websites you link to from our website.*

*INGLOT also describes the measures we take to protect the information and how our customers can contact us about our privacy practices.*

 *1. Information we collect*

*INGLOT may collect personal information about customers from various sources: 1. Information You Provide to Us , 2. Information We Collect Automatically, 3. Information We Collect From Other Sources , 4. Advertising & Analytics Services and Online Tracking.*

*1.1  Information You Provide to Us*

*INGLOT may collect this information when a customer provides it at one of our stores, on our website, via our social media pages, when he/she downloads one of our mobile applications (either via Apple iOS or Android) onto his/her mobile devices, at one of our events. When you visit this site, our social media pages, or use services or features of one of our mobile applications, we may also collect certain information about your device or usage by automated means, including using technologies such as cookies, web server logs and web beacons. We may collect information when you register, create an account profile, subscribe to our emails, mobile messages, push notifications, or social media notifications, post on our forums or blogs, participate in sweepstakes, contests, promotions, surveys, or polls, communicate with us, shop in our online store, order physical or digital gift cards, request customer support, apply for a job or otherwise communicate with us through the Service.*

*1.2 Information We Collect Automatically*

*INGLOT may automatically collect some information when you visit our website, mobile application or click on INGLOT'S online advertisements. This information concerns your usage or device by automated means or by using technologies such as cookies, web server logs and web beacons. This information includes, inter alia: your IP address, your unique device identifier, geolocation data.*

*INGLOT may also collect information about your usage and browsing habits using cookies. If you want to know more about our cookies policy, please read our cookies policy.*

*2. Information You Provide*

*The types of personal information you may provide to us includes, for example:*

*a) Contact information (such as name, postal address, email address, and mobile or other phone number),*

*b) Age and date of birth,*

*c) Gender,*

*d) Username and password ,*

*e) Payment information (such as your payment card number, expiration date, delivery address, and billing address),*

*f) Content you provide (such as photographs, videos, reviews, articles, survey responses and comments)*

*g) Information provided to us through social media networks or one of our mobile applications when you visit our social media pages or use one of our mobile applications (such as your name, profile picture, likes, location, friend list and other information described on the social media network or in application sign-up page, or your geo-location details when using one of our mobile applications)*

***3. How We Use The Information***

*3.1 We may use the information You Provide To US to simplify and improve your experience of using the our website or a mobile application :*

*a) creating and managing your online account;*

*b) identifying you automatically when you sign in to INGLOT website;*

*c) remembering searches you made and goods purchased;*

*d) remembering items you added in your shopping basket;*

*e) obtaining information about your chosen method of payment and important information for processing your payment;*

*f) integrating with social media pages; operating, evaluating and improving our business.*

*g) we may periodically send promotional information about new products, special offers or other information which we think you may find interesting about INGLOT.*

*3.2 INGLOT may use the information We Collect Automatically for market research, data analysis and system administration purposes, i.e. to determine whether you have visited us before or are new to the site, to tailor ads displayed to you on our site and elsewhere and for compliance with our legal obligations, policies and procedures or other ways for which specific notice is provided at the time of collection.*

*4. Purpose of collected information*

*INGLOT collects information only as necessary for the purposes for which it was obtained, e.g.: for consumer service, contests, marketing and other promotions, third party social networks, personalization (offline and online), order fulfilment, other general purposes (e.g. internal or market research, analysis, security), legal reasons.*

*5. Your rights and choices*

*1. Customer has a right to request:*

*a) access to your personal data;*

*b) an electronic copy of your personal data (portability);*

*c) correction of your personal data if it is incomplete or inaccurate;*

*d) deletion or restriction of your personal data in certain circumstances provided by the applicable law. These rights are not absolute. If we have obtained your consent for the processing of your personal data, you have the right to withdraw your consent at any time.*

*2. To exercise your right or choice hereinabove, please contact us in the manner specified below.*

*a) If You want to revoke a decision about sending marketing communications by email, you can do that at any time by clicking on the Unsubscribe link within the marketing emails you receive from us or by contacting us by email privacypolicy@inglot.com*

*b) If you want to delete or remove our apps from your social networking account, follow the instructions from the social network: Facebook (Facebook Help Center), Instagram or others.*

*c) If you want to modify your email subscriptions, you can do that at any time by clicking on the Unsubscribe link within the marketing emails you receive from us or through its online store panel.*

*6. Protection of your personal information*

*INGLOT protects personal information by taking appropriate physical, technical and organizational measures to help guard against unauthorized or unlawful access, use, processing or alteration of the personal information that we obtain from you through our Services and against any breaches or loss of such personal information, such as anonymization, pseudonymization, encryption, restricted access, etc..*

*You should know that no system or technology is completely secure. Therefore, you should protect your user names, passwords of your accounts. INGLOT is not responsible for the security of any independent third-party applications and services or the data those third-party applications and services may collect about you. Please ask those third parties how they keep your data safe.*

*7. Privacy Rights of California Residents*

*7.1 California's Civil Code Section 1798.83 states that California residents have the right to request certain information regarding our disclosure of personal information to third parties for their direct marketing purposes. To make such a request, please send an email to privacypolicy@inglot.com*

*7.2 Under Assembly Bill 370 (Muratsuchi), amended CalOPPA AB 370, privacy policies for websites or online services used by California residents (includes mobile apps for smartphones and tablets) are required to:*

*a) Disclose how a business's website or online service responds to Do Not Track signals from Web browsers. INGLOT currently does not change our tracking practices in response to "do-not-track" signals or other similar mechanisms.*

*b) Disclose whether third parties may collect visitors' personally identifiable information on a business's website or online service. Third parties that have content or services on our site such as a social feature, analytics service, or an advertising network partner, may obtain information about your browsing or usage habits but this information does not include personal information. These third parties do not change their tracking practices in response to "do-not-track" signals from your web browser and we do not obligate these parties to honor "do-not-track" signals.*

*c) Provide "a clear and conspicuous hyperlink in the operator's privacy policy to an online location containing a description, including the effects, of any program or protocol the operator follows that offers the consumer that choice." To make such a request, please send an email to privacypolicy@inglot.com*

**8. Children's Privacy**

*Our website is a general audience website. The website content is not directed toward children or minors who are under the age of 18. If we become aware that we have inadvertently received personal information from a visitor under the age of eighteen on the site, we will delete the*

*information from our records. If you have questions about personal data that may have been submitted by a child or minor, please email us at privacypolicy@inglot.com*

*9. Contact information*

*If you want to contact us on the matters relating to the Privacy Policy, you can do that at any time. You can do this by sending an e-mail to us at privacypolicy@inglot.com. You may also contact us in writing at the addresses listed below:*
*Amercicas: INGLOT USA LLC, 14563 226th Street, Springfield Gardens, NY 11413, Attention: Privacy Administrator;*
*EU: INGLOT Spółka z ograniczoną odpowiedzialnością, ul. Lwowska 154 Przemyśl 37-700 Poland, Attention: Privacy Administrator*

*10. COOKIES*

*A cookie is a file that websites send to your computer or other Internet - connected device and kept there. INGLOT cookies do not store personal information such as your name or address.*

*Types of cookie files that INGLOT uses on our website:*

1. *First party cookies (directly from INGLOT page) and Third Party Cookies (cookies from third party websites). For example, our page may contain content embedded from other pages, like Facebook or YouTube, and these sites may set their own cookies. Please be aware that INGLOT is not responsible for the privacy practices of other websites and do not have any access to that files or control over it.*
2. *Session cookies and Persistent cookies. Session cookies are files that we store only temporarily during a browsing session – when the browser is closed these cookies are deleted from your device. Persistent cookies are saved on your computer for a fixed period of time (based on the page owner settings or deleted after manually removal by the user) and are not deleted when the browser is closed.*

3. *Strictly necessary cookies that enable you to use the website and its features. Without these cookies you could not use the page at all. Functional cookies record information about you and allow INGLOT to tailor the website to suit your needs. Without these cookies you could not use the page properly. Business cookies that provides INGLOT with the possibility of technical realization of the page. Without these cookies you can still use the page, but the lack of it may deeply affect the level of company services.*

## 11. HOW WE USE COOKIES

*Cookie files are used by INGLOT to simplify and improve your experience of using the page. Examples of that include creating and managing your online account; identifying you automatically when you sign in to INGLOT website; remembering searches you made and goods purchased; remembering items you added in your shopping basket; obtaining information about your chosen method of payment and important information for processing your payment; integrating with social media pages; operating, evaluating and improving our business. We may periodically send promotional information about new products, special offers or other information which we think you may find interesting about INGLOT.*

*We can assure you that INGLOT takes appropriate precautions to protect all of the collected data.*

## 12. PURPOSES OF USING COOKIES

*You can choose to accept or decline cookies. Most web browsers automatically accept cookies, but you can usually modify your browser settings to decline cookies if you prefer.*

*If you prefer to limit, block or delete your cookies from the page, you need to use your browser by accessing its settings, although you must remember, that these actions may prevent you from taking full advantage of our website.*

58) Due to Plaintiff's disability, she could not understand Defendant's website and she could not give informed consent to Defendant's installation of data and information tracking software on her computer. Defendant also could not give informed consent to Defendant's collection of her browsing history and the placement of analytics on her computer.

59) Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from her computer and determine which programs should be installed and operated on her computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

## **Request for Jury Trial**

60) Plaintiff requests a jury trial.

Submitted by:
Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email: info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  305-824-9800
Facsimile:  305-824-3868
Email:  lr1208@live.com
By: _____/s/_____
LYDIA C. QUESADA, ESQ., of Counsel
FL BAR NO.: 191647